UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TOMMY SCULLY                              DOCKET NO. 6:10-cv-01611
on behalf of minor child T.S.

VERSUS                                    JUDGE DOHERTY

MICHAEL J. ASTRUE,                        MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be REVERSED and

REMANDED.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

On October 16, 2008, Tommy Scully applied for Supplemental Security

Income for his son, T.J.S.[1]  T.J.S. was born on October 22, 1992.[2]  At the time of the

application, T.J.S. was 15 years old.  He reached the age of eighteen in 2010, and, at

the time of this report, he had just reached his nineteenth birthday.  In the application

---

[1]        Rec. Doc. 7-6 at 2.

[2]        Rec. Doc. 7-6 at 2.

for Social Security benefits, Mr. Scully alleged that T.J.S. became disabled on January 1, 2002 due to a learning disability, speech problems, and hearing voices.[3] On February 27, 2009, the Commissioner initially denied Mr. Scully's claim.[4]  Mr. Scully requested a hearing,[5] which was held on October 16, 2009.[6]  On January 22, 2010, the administrative law judge ("ALJ") issued an unfavorable decision.[7]  Mr. Scully sought review by the Appeals Council, but the Appeals Council denied review.[8]  This lawsuit was then filed.

At the time of the hearing, T.J.S. was sixteen years old and was repeating the ninth grade at Patterson High School in Patterson, Louisiana.[9]  He was not enrolled in the mainstream diploma-track curriculum, but he was enrolled in the "Pre-GED Skills Options Program,"[10] a vocational program with a goal of obtaining an

---

[3] Rec. Doc. 7-5 at 4; Rec. Doc. 7-7 at 36.

[4] Rec. Doc. 7-5 at 4.

[5] Rec. Doc. 7-3 at 5.

[6] The hearing transcript is in the record at Rec. Doc. 7-3 at 25-58.

[7] Rec. Doc. 7-3 at 9 - 21.

[8] Rec. Doc. 7-3 at 2.

[9] Rec. Doc. 7-3 at 54; Rec. Doc. 7-7 at 4, Rec. Doc. 7-8 at 66.  On April 7, 2009, his anticipated exit program from the school was May 22, 2012.  Rec. Doc. 7-8 at 61.

[10] Rec. Doc. 7-8 at 61, 66.

-2-

alternative GED.  He has been receiving special education services since at least 2002 when his learning disability was diagnosed.[11]

In 2002, T.J.S. scored in the low average range on the Woodcock-Johnson III Test of Cognitive Abilities.[12]  He has been diagnosed as having a Specific Learning Disability because of his deficits in overall math skills.[13]  In 2006, while enrolled in sixth grade at Patterson Junior High School, a re-evaluation report was prepared, which reviewed various types of information.  The report shows that, in September 2005, T.J.S. was reading at a third grade level, spelling at a fifth grade level, and doing math at a fourth grade level.[14]  In May 2006, he was at risk of failing both math and reading.[15]  On the statewide LEAP test administered in the spring of 2005, he scored an "unsatisfactory" in English and an "approaching basic" in math.[16]  In the spring of 2009, his educational needs were noted to be academic and cognitive.[17]

_____

[11]    Rec. Doc. 7-3 at 40; Rec. Doc. 7-8 at 34.

[12]    Rec. Doc. 7-8 at 33, 43.

[13]    Rec. Doc. 7-8 at 34, 53.

[14]    Rec. Doc. 7-8 at 35.

[15]    Rec. Doc. 7-8 at 35.

[16]    Rec. Doc. 7-8 at 35.

[17]    Rec. Doc. 7-8 at 63.

Although no behavior issues were reported at that time,[18] the record contains evidence that T.J.S. has had problems with behavior at school and at home, including anger management issues and sexual acting out.

Records from The Pediatric Clinic of St. Mary Parish show that, on February 15, 2008,[19] T.J.S. presented in order to get something to help him concentrate and to help his behavior.  The physician's diagnosis was possible attention deficit hyperactivity disorder (ADHD) and behavior problems.  Anger management was recommended, and an appointment was made at the Teche Action Clinic, which provides psychiatric services.

On February 21, 2008,[20] T.J.S. presented at the pediatric clinic with problems concerning his attitude at home and school.  He was diagnosed with behavior problems, prescribed Risperdal, and advised to follow up with the Teche Action Clinic.

---

[18]     Rec. Doc. 7-8 at 63.

[19]     Rec. Doc. 7-8 at 6.

[20]     Rec. Doc. 7-8 at 6.

On May 15, 2008,[21] the diagnosis was "behavior disorder," and the doctor recommended that T.J.S. continue taking Risperdal and keep his appointment at the Teche Action Clinic.

On October 3, 2008,[22] T.J.S. presented with hearing voices in class, making bad grades, and not paying attention.  Again, he was diagnosed with behavior problems.

Records from the Teche Action Clinic, which provides psychiatric care for T.J.S., are included in the record.  In March 2008, T.J.S. was diagnosed with oppositional defiant disorder ("ODD") rule out bipolar.[23]  At that time, he was taking Risperdal and there were concerns about his sexual acting out.[24]  In June 2008, there were concerns about suicidal ideation.[25]  Behavior problems at school are mentioned in August 2008.[26]  In September 2008, T.J.S. reported hearing voices, and his diagnosis changed to ODD rule out psychosis.[27]  In October 2008, his diagnosis was

---

[21]     Rec. Doc. 7-8 at 5.

[22]     Rec. Doc. 7-8 at 3.

[23]     Rec. Doc. 7-8 at 27.

[24]     Rec. Doc. 7-8 at 22.

[25]     Rec. Doc. 7-8 at 18.

[26]     Rec. Doc. 7-8 at 14.

[27]     Rec. Doc. 7-8 at 10-11.

changed to ODD and depression.[28]  In January 2009, the diagnosis was changed to psychosis, and he was prescribed Symbyax.[29]  In February 2009, it was noted that T.J.S. "has a pattern of continued behavior issues," and Vyvanse was prescribed.[30] In March 2009, T.J.S.'s diagnosis was changed to bipolar and ADHD, and it was noted that he was having difficulties completing tasks.[31]  Focus was also an issue in June and July 2009.[32]

T.J.S. reports being teased and bullied at school and having no friends outside of his family.[33]  At the time of the hearing, he was taking Vyvanse and Symbyax,[34] and his most recent diagnosis by the Teche Action Clinic in the record was that he is bipolar.

T.J.S. was examined twice by psychologists.   In January 2009, Carmen Broussard, Ph.D., a licensed psychologist, conducted a mental status examination and clinical interview, and she administered the Weschler Adult Intelligence Scale-III.

---

[28]     Rec. Doc. 7-8 at 9.

[29]     Rec. Doc. 7-8 at 87-88.

[30]     Rec. Doc. 7-8 at 85-86.

[31]     Rec. Doc. 7-8 at 79.

[32]     Rec. Doc. 7-8 at 74; Rec. Doc. 7-8 at 72.

[33]     Rec. Doc. 7-3 at 36, 38-39.

[34]     Rec. Doc. 7-3 at 27-28; Rec. Doc. 7-7 at 59.

Her report[35] indicates that she found T.J.S.'s mental status and orientation to be fair although she noted that he does not complete many activities expected for his age. She observed no signs of psychopathy or psychotic symptoms. She was unable to estimate T.J.S.'s intellectual functioning because the testing was invalidated by his scoring no points on seven subtests.  The implication seems to be that she thought he was malingering.[36]

In August 2009, T.J.S. was evaluated by Naomi L. Friedberg, Ph.D., who is also a licensed psychologist.  In her report,[37] Dr. Friedberg explained that T.J.S. had difficulty maintaining his motivation during the testing process, becoming defensive and cautious as the questions became more challenging.  For that reason, she considers the test results to be a "low estimate... but not a far departure from his true intellectual functioning."  She also noted that, because of its side effects, T.J.S. had not taken his Symbyax on the day that she evaluated him.  Based on the tests administered, Dr. Friedberg concluded that T.J.S. has a verbal IQ of 56, which is in the mild mentally disabled range; a performance IQ of 50, which is also in the mild mentally disabled range; and a full scale IQ of 49, which is in the moderately

---

[35]      Rec. Doc. 7-8 at 41-43.

[36]      Rec. Doc. 7-8 at 53.

[37]      Rec. Doc. 7-8 at 52-58.

mentally disabled to mild mentally disabled range.  Dr. Friedberg did not question the validity of the testing or the scores.  In her conclusions, she stated that T.J.S.'s cognitive functioning was assessed to be in the moderately mentally disabled to mild mentally disabled range, and that his estimated intellectual functioning was assessed to be in the mild mentally disabled to borderline range.  She also noted that he has "a severe and chronic mental illness that . . . greatly negatively impact[s] his ability to function on a daily basis."

## ASSIGNMENT OF ERRORS

Mr. Scully claims that the Commissioner's ruling is erroneous because the Commissioner (1) failed to properly consider Dr. Friedberg's report; (2) failed to find that T.J.S.'s cognitive and intellectual deficits are severe impairments; (3) failed to properly evaluate whether T.J.S. meets Listing 112.05(C); and (4) failed to properly evaluate whether T.J.S. functionally equals Listing 112.05(C).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the

decision.[38]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[39]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[40]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[41]  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[42]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[43]  A claimant has the burden of proving his disability.[44]

---

[38]      42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[39]      *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[40]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[41]      *Boyd v. Apfel,* 239 F.3d at 704.

[42]      *Singletary v. Bowen*, 798 F.2d at 823.

[43]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[44]      See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## CHILDHOOD DISABILITY BENEFITS

An individual under the age of eighteen is considered to be disabled if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[45]

A three-step evaluative process is utilized to determine whether a person under the age of eighteen is disabled.[46]   At step one, it must be determined whether the claimant is engaging in substantial gainful activity.  A child claimant who is engaging in substantial gainful activity will be found not disabled regardless of his medical condition, age, education, or work experience.[47]

At step two, it must be determined whether the claimant has a medically determinable severe impairment or a combination of impairments that is severe.  A child found to have a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations will be found to be not disabled.[48]

---

[45]      42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906.

[46]      20 C.F.R. § 416.924; *Lopez v. Barnhart*, 176 Fed. App'x 618, 619 (5th Cir. 2006).

[47]      20 C.F.R. § 416.924(b).

[48]      20 C.F.R. § 416.924(c).

At step three, it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing or that functionally equals a listing.[49]  When the impairments do not meet or equal a listed impairment, the Commissioner will evaluate the functional limitations caused by the child's impairments to determine whether they are disabling.[50]

## DISCUSSION

In his ruling, the ALJ followed the required three-step sequential process for determining whether T.J.S. is disabled.  At step one, the ALJ found that T.J.S. has not engaged in substantial gainful activity at any relevant time.[51]  This finding is supported by the record, which contains no evidence that T.J.S. has engaged in significant physical or mental activities for pay or profit[52] at any relevant time.

At step two, the ALJ found that T.J.S. has two severe impairments:  a learning disorder and "oppositional defiant disorder by rule out bipolar disorder."[53]  This is

---

[49]     20 C.F.R. § 416.972.

[50]     20 C.F.R. § 416.926a.

[51]     Rec. Doc. 7-3 at 11.

[52]     20 C.F.R. § 416.972.

[53]     Rec. Doc. 7-3 at 3.

supported by the evidence in the record, which establishes that T.J.S. was diagnosed with a specific learning disability that impairs his ability to perform well in mathematics and also with oppositional defiant disorder. However, the ALJ's finding that T.J.S. has a severe impairment described as "oppositional defiant disorder by rule out bipolar disorder" is based on a diagnosis made by Teche Action Clinic in March 2008 and ignores subsequent diagnoses, also by the mental health professionals at Teche Action Clinic, including the most recent diagnoses of bipolar and ADHD, which were made in March 2009. The ALJ offered no explanation for ignoring the later diagnoses. "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[54]

The ALJ did not evaluate whether T.J.S.'s cognitive and intellectual deficits are severe impairments. Dr. Friedberg determined that T.J.S.'s verbal skills are "quite low and basic,"[55] that his IQ is "well below average,"[56] and has significant "intellectual and academic limitations."[57] The test she administered revealed

---

[54]    *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). See, also, *Stephens v. Barnhart*, 174 Fed. App'x 232, 233 (5th Cir. 2006).

[55]    Rec. Doc. 7-8 at 52.

[56]    Rec. Doc. 7-8 at 56.

[57]    Rec. Doc. 7-8 at 58.

cognitive and intellectual deficits.[58]   Those deficits are mirrored in T.J.S.'s performance at school.  He was struggling at school even though he was enrolled in a special education program with a GED rather than a high school diploma as its goal. The ALJ's conclusion that T.J.S. was enrolled in regular classes 80% of the time misinterprets the fact that he is being provided with resource (i.e., special education) services within a regular classroom setting.   Rather than focusing on T.J.S.'s academic, cognitive, and intellectual deficits, the ALJ focused on T.J.S.'s testimony that he does not like to read and ignored Dr. Friedberg's testing that resulted in her conclusion that T.J.S. falls in the moderately mentally disabled to mild mentally disabled range.  With regard to reading, Dr. Friedberg specifically stated that T.J.S. "indicated that he can read, but that he does this very slowly and so he gets frustrated when he tries to read."[59]  The school records indicate that his teachers have taken the time to read to him the materials for tests and assignments.[60]  Again, the ALJ selected certain parts of the record and ignored others.  Accordingly, the ALJ's finding that T.J.S.'s only severe impairments are his learning disorder and "oppositional defiant

---

[58]      Rec. Doc. 7-8 at 56.

[59]      Rec. Doc. 7-8 at 54.

[60]      Rec. Doc. 7-8 at 61.

disorder by rule out bipolar disorder" is not supported by substantial evidence and was reached by failing to apply the proper legal standards.

The Commissioner argues that the ALJ had good cause to discount the IQ scores reached in Dr. Friedberg's testing, noting that the Fifth Circuit has recognized discounting opinions that are brief and conclusory, not supported by medically accepted techniques, or otherwise unsupported by the evidence.[61]  In this case, however, Dr. Friedberg's report is  not conclusory, there is no evidence that she used techniques that are not medically accepted, and her opinions are supported by other evidence in the record including T.J.S.'s school records and the records of his pediatrician and mental health care providers.  Although Dr. Friedberg notes that the claimant's scores might be "a low estimate of his true intellectual functioning," she also found that they are "not a far departure from his true intellectual functioning." Therefore, the scores are valid.  Dr. Broussard was unable to derive valid test results. There is no reason to discount valid scores obtained by Dr. Friedberg simply because Dr. Broussard failed to obtain valid scores.  Indeed, if an ALJ disregards a medical opinion, he must provide an explicit rationale for doing so.[62]  In this case, however,

---

[61]    *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

[62]    20 C.F.R. § 416.927(d).

the ALJ provided no explanation for failing to incorporate the results of Dr. Friedberg's testing in his evaluation of T.J.S.'s impairments. This was error.

At step three, the ALJ found that T.J.S. does not have an impairment or combination of impairments that meets or equals a listing.[63] In reaching this conclusion, the ALJ considered Listing 112.02, which pertains to organic mental disorders, and Listing 112.08, which pertains to personality disorders. He did not consider whether T.J.S. meets or equals Listing 112.05, which pertains to mental retardation. Dr. Friedberg evaluated T.J.S. and determined that his cognitive functioning is in the moderately mentally disabled to mild mentally disabled range and determined that his intellectual functioning is in the mild mentally disabled to borderline range based on a verbal IQ of 56, performance IQ of 50, and full scale IQ of 49. Although Dr. Friedberg used the term "mentally disabled" rather than the term "mentally retarded," her conclusions are tied to the IQ scores, which are used in the Listing 112.05 to determine the level of severity of mental retardation.

The undersigned finds that, in light of Dr. Friedberg's report, which was a part of the record and was reviewed by the ALJ, the ALJ erred in failing to determine whether T.J.S. meets Listing 112.05 and in failing to determine whether T.J.S. functionally meets Listing 112.05. The Commissioner attempts to justify the ALJ's

---

[63] Rec. Doc. 7-3 at 12-14.

failure to discuss Listing 112.05 by asserting that no physician had diagnosed T.J.S. as being mentally retarded.  This ignores Dr. Friedberg's Axis II diagnosis of T.J.S. as having cognitive functioning in the moderately mentally disabled to mild mentally disabled range.  The diagnosis was made, but it was ignored by the ALJ.

Because the ALJ failed to evaluate whether T.J.S. meets or functionally equals the Listing 112.05, the listing for mental retardation, the undersigned finds that the ALJ erred.  For that reason, the undersigned recommends that this matter be reversed and remanded for such an evaluation.

Additionally, the ALJ erred in evaluating T.J.S.'s limitations in the six functional equivalence domains.  The ALJ found that T.J.S. has less than a marked impairment in attending and completing tasks.  This conclusion relied upon selective information from the record without adequate explanation.  For example, the ALJ stated that the records from Teche Action Clinic "do not reveal any complaints or findings of any deficits in the claimant's ability to attend and completes [sic] tasks." That statement is incorrect.  The Teche Action Clinic records for February 2009 indicate that T.J.S. is having "increased difficulty with concentration"[64] and "completing tasks."[65]   In May 2009, the records note that T.J.S. was having

---

[64]      Rec. Doc. 7-8 at 84.

[65]      Rec. Doc. 7-8 at 85.

-16-

difficulties completing tasks,[66] and his inability to focus was also an issue in June and July 2009.[67]   Although Dr. Broussard concluded that T.J.S.'s ability to attend and complete tasks is "fair," she also noted that he "does not complete many activities that are expected for his age."[68]   The ALJ's conclusion also ignores records from The Pediatric Clinic of St. Mary Parish, which show that, on February 15, 2008,[69] T.J.S. presented in order to get something to help him concentrate.

The ALJ found that T.J.S. has less than a marked impairment in the domain of interacting and relating with others, but this conclusion was reached only by discounting information provided by T.J.S. and his parents and finding "inconsistencies" in the record.

To meet the listing for mental retardation, an individual must have both significantly subaverage general intellectual functioning and also deficits in adaptive functioning.[70]   Thus, T.J.S. must show not only that he has significant subaverage intellectual functioning – as demonstrated in the test scores detailed above – but also either (a) marked impairment in age-appropriate cognitive/communicative function,

---

[66]     Rec. Doc. 7-8 at 76.

[67]     Rec. Doc. 7-8 at 74; Rec. Doc. 7-8 at 72.

[68]     Rec. Doc. 7-8 at 43.

[69]     Rec. Doc. 7-8 at 6.

[70]     20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.05.

or (b) marked impairment in age-appropriate social functioning, (c) marked impairment in age-appropriate personal functioning.[71]   Such impairments may be documented by the parents or others who know the child.[72]

While the ALJ did not, in this case, evaluate whether T.J.S. meets the criteria for mental retardation, there is some overlap in the functional criteria for mental retardation and for the listings that the ALJ considered.  Therefore, the ALJ did evaluate T.J.S.'s social functioning.  Testimony was provided at the hearing by both T.J.S. and his father concerning his impaired social functioning.  In a function report mentioned by the ALJ in his decision, T.J.S.'s mother provided similar information. But all of this information was also discounted by the ALJ.  Therefore, although the record is replete with information that T.J.S. is bullied and teased at school and has no friends outside the family, the ALJ found the information "inconsistent" and concluded that T.J.S. has less than marked limitations in interacting and relating with others.

Because the record contains both evidence demonstrating that T.J.S. has subaverage intellectual functioning and is impaired in social functioning, the ALJ should have evaluated whether T.J.S. meets the criteria for Listing 112.05, mental

---

[71]      20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.02B2b, B2c, B2d.

[72]      *Id.*

retardation.  This ALJ erred in failing to do so, and this matter should be remanded for such an evaluation.

The ALJ also found that T.J.S. has no limitation in the ability to care for himself. He stated that T.J.S.'s mother alleged that T.J.S. is impaired in this domain, claiming that he cannot cook a meal for himself, get to school on time, study and do homework, use public transportation by himself, or accept criticism or correction.[73] But the ALJ said "there is nothing in the record to support these allegations."[74]  That is not the case.  The ALJ  noted that T.J.S.'s school records indicate tardiness, which is also noted in the school records.[75]   Records from Teche Action Clinic note problems with T.J.S. accepting criticism from his father.[76]  Both psychologists noted that T.J.S. cannot manage money.  Dr. Broussard said his "ability to manage funds is estimated to be limited."[77]   Dr. Friedberg said T.J.S. will need "assistance in managing personal financial affairs."[78]  The information in the record that is relevant to evaluating T.J.S.'s functioning in this domain was not addressed by the ALJ.

---

[73]     Rec. Doc. 7-3 at 19.

[74]     Rec. Doc. 7-3 at 19.

[75]     Rec. Doc. 7-3 at 15; Rec. Doc. 7-8 at 38, 39.

[76]     Rec. Doc. 7-8 at 18.

[77]     Rec. Doc. 7-8 at 43.

[78]     Rec. Doc. 7-8 at 58.

The ALJ's decision contains multiple examples in which certain information was selected to the exclusion of other relevant information  to support the conclusion that T.J.S. is not disabled.  The ALJ ignored the significance of Dr. Friedberg's testing, which resulted in her concluding that T.J.S. is mentally disabled.  Despite Dr. Friedberg's conclusions, the ALJ did not evaluate whether T.J.S. meets or functionally equals the listing for mental retardation.  This was error.  The ALJ also erred in his analysis of T.J.S.'s functional capacity.   For these reasons, the undersigned recommends that the Commissioner's decision be reversed and remanded, with instructions for the Commissioner to obtain updated medical, mental health, and school records for T.J.S. and to evaluate whether T.J.S. meets or functionally equals the listing for mental retardation as well as the listings for organic mental disorders and personality disorders.

## CONCLUSION AND RECOMMENDATION

The undersigned fully reviewed the entire record on this matter, finds that the Commissioner erred in reaching the final decision in this matter.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the Commissioner's decision be REVERSED and REMANDED.  More particularly, it is the undersigned's recommendation that this matter be remanded for consideration of updated medical, mental health, and school records and to determine whether

T.J.S. meets or equals the listing for mentally retardation, organic mental disorders, or personality disorders.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 28th day of October 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

-21-